**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **DORIS PARKER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:10CV558 |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Doris Parker, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 12) and motion to remand (docket no. 13) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

1

Defendant's motion for summary judgment (docket no. 15) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on December 17, 2007, claiming disability due to back problems, high blood pressure, arthritis and diabetes, with an alleged onset date of October 15, 2007. (R. at 61, 69, 71.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 57-66; 69-72.) On October 17, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 24-56.) On December 1, 2008, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where Plaintiff retained the residual functional capacity to perform her past relevant work, either as actually performed, or as generally performed in the national economy. (R. at 13-20.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. The first step in the sequence is to determine whether the claimant was

working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

---

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 15.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of disc herniation at L-4-L-5 of the lumbar spine, osteoarthritis, diabetes mellitus with peripheral neuropathy, and hypertension, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 16-17.) The ALJ next determined that Plaintiff had the RFC to perform light work, except that she could only occasionally climb, balance, stoop, kneel, crouch, or crawl. (R. at 17-19.)

The ALJ then determined at step four of the analysis that Plaintiff could perform her past relevant work as a shirt presser, poultry processor, janitor, and cashier/checker, because such work did not require activities precluded by Plaintiff's RFC. (R. at 19-20.) Because the ALJ determined that Plaintiff was capable of performing her past relevant work, it was unnecessary to pursue the analysis to step five in which the Commissioner would have had the burden to show that, considering the claimant's age, education, work experience, and RFC, the claimant was capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f); 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 17.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) the ALJ committed legal error

in dismissing Plaintiff's complaints of back pain and standing limitations; (2) the ALJ's reliance on the opinion of a consulting, non-examining physician was irrational, because the non-examining physician "only considered three different medical reports and emphasized a speculative note issued by Dr. Graham [an examining physician] only six weeks after major fusion, double laminectomy surgery"; and (3) assuming arguendo that the ALJ was correct in assigning weight to the non-examining doctor's opinion, it was legal and factual error for the ALJ to find that Plaintiff could perform her past relevant work within the restrictions noted by the non-examining consulting doctor. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 26-35.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 7-13.)

1. **Plaintiff contends that the ALJ committed legal error in dismissing Plaintiff's complaints of back pain and standing limitations.**

Plaintiff argues that it was irrational for the ALJ not to find Plaintiff's subjective reports of disabling pain credible. Plaintiff asserts that, "a review of all the records in its [sic] entirety, including a fifty-one year old Plaintiff, who had worked for years in manual jobs, who underwent major fusion and double laminectomy surgery, who after surgery had consistent complaints of left leg pain and low [sic] back pain causing difficulty standing, and who was under the care of a narcotics pain neurologist and prescribed major narcotics such as Methodone [sic], Lyrica, and Dilauded [sic] for pain, leads to the only rational conclusion that Plaintiff's statements about her inability to stand for long periods of time is credible." (Pl.'s Mem. at 31-32.) In support of her argument, Plaintiff relies on her own testimony before the ALJ concerning her alleged disabling pain, and her previous oral and written statements to treating physicians and the Agency in which Plaintiff described significant pain in her leg and back and difficulty

walking. (Pl.'s Mem. at 28-29.) Plaintiff also criticizes the ALJ for what she understands to be the ALJ's overreliance on evidence of Plaintiff's ability to engage in household chores such as laundry and washing dishes: "Clearly, the ALJ's assertion that because [Plaintiff] occasionally did dishes and washed small loads of clothes negates her testimony that she cannot stand or walk for long periods of time is irrational and error." (Pl.'s Mem. at 32.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms

and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit (as the immediate controlling appellate authority for this Court) has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

Plaintiff's suggestion that the ALJ dismissed her testimony concerning her disabling pain and an inability to walk or stand solely, or even primarily, on the basis of her testimony regarding light household chores is not supported by the evidence in the record. The ALJ made his determination of Plaintiff's credibility on the basis of several factors, including the relevant objective medical evidence. (R. at 17-19.) The ALJ explicitly noted Plaintiff's testimony and past statements regarding back pain and difficulty standing, and while the ALJ found that

Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," he also found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms not credible to the extent that they were inconsistent with Plaintiff's RFC. (R. at 18.)

Specifically, the ALJ relied on a number of Plaintiff's medical examinations after her December 2007 surgery, which indicated significant improvement in Plaintiff's condition. For instance, on January 22, 2008, Plaintiff had a follow-up exam with Robert S. Graham, M.D., who stated the following about Plaintiff: "Her incision is well healed. Her strength is good. Her knee jerks are 2+ bilaterally. Sensation is intact. Motor strength is intact. She is still complaining of some pain and mostly it seems in the left eye, but she has been going to Bingo nightly and claims that her activity level has been fairly good." (R. at 382.) The ALJ also relied on an evaluation of Plaintiff by Durgada Basavaraj, M.D., who examined Plaintiff on September 29, 2008 for complaints of chronic pain. Dr. Basavaraj found Plaintiff's current severity of pain to be "moderate and 4/10 gauging with the [patient's] behavior during examination and waiting in the room and severity at rest 3." (R. at 423.) This is in contrast to Plaintiff's subjective reports of pain in testifying before the ALJ on October 17, 2008, when Plaintiff testified that her current pain level was a seven (on a scale of one-to-ten), that a bad day was "maybe an eight or nine," and that on a good day it was "probably a six." (R. at 38-39.) The discrepancy between Dr. Basavaraj's estimate of Plaintiff's pain based on her disposition and behavior and Plaintiff's own subjective reports supports the ALJ's finding that Plaintiff's subjective reports were not credible.

Other objective medical evidence in the record also supports the ALJ's finding that Plaintiff's subjective reports were not credible. For example, a May 2008 follow-up examination

with David Richardson, M.D. revealed Plaintiff's condition to be normal, except for tenderness in her left lower flank and a limp that favored the left leg.  (R. at 409.)  Dr. Richardson scheduled Plaintiff for further evaluation on May 12, 2008, but she did not attend the appointment.  (R. at 410.)  Also, a May 30, 2008 motor nerve conduction study showed no evidence of neuropathy. (R. at 436.)  Finally, Dr. Basavaraj's examinations in September and December of 2008 revealed that Plaintiff's osteoarthritis and chronic back pain continued to improve with exercise and medication  (R. at 431-33, 445, 447, 449, 451).

   Although the ALJ took into consideration Plaintiff's ability "to perform significant activities of daily living such as cooking, washing dishes, washing clothes, taking care of a newborn baby and getting out to play bingo" in determining that Plaintiff was not disabled, those considerations were not the only basis for the ALJ's decision.  (R. at 19.)  The ALJ acknowledged Plaintiff's testimony concerning her back pain and her difficulty with walking and standing, but the ALJ found such testimony not credible in light of the objective medical evidence.  As noted earlier, the Court must give great deference to the ALJ's credibility determination, and it may only reject this finding if it is unreasonable, based on the record presented.  Because there was substantial evidence supporting the ALJ's credibility finding, the Court rejects Plaintiff's contention that the ALJ committed legal error in dismissing Plaintiff's complaints of back pain and standing limitations.

**2.  Plaintiff contends that the ALJ's reliance on the opinion of a consulting, non-examining physician was irrational, because the non-examining physician "only considered three different medical reports and emphasized a speculative note issued by Dr. Graham [an examining physician] only six weeks after major fusion, double laminectomy surgery."**

Plaintiff relies on the following language from the Fourth Circuit Court of Appeals, where it described the factors that are to guide ALJs in the evaluation of medical evidence:

> The ALJ [is] obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527 (2005)). Courts typically accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant (citation and internal quotations omitted).

Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Plaintiff asserts that it was irrational for the ALJ "to consider the opinion of consulting [sic] non-examining physician. (Pl.'s Mem. at 32.) Plaintiff does not mention the non-examining physician by name, but the Court infers that the physician referred to is Tony Constant, M.D. (See Pl.'s Mem. at 33.)

Plaintiff registers three complaints conerning the ALJ's reliance on Dr. Constant: (1) Dr. Constant did not personally examine Plaintiff; (2) Dr. Constant did not consider all of the post-operative notes in Plaintiff's medical file, including those by Dr. Basavaraj; and (3) Dr. Constant relied on a "speculative note" issued by Dr. Graham, in which Dr. Graham predicted that Plaintiff would be able to return to work soon. (Pl.'s Memo at 32-33.) Although the Fourth Circuit's opinion in Hines v. Barnhart stated that the ALJ should typically assign greater weight to the opinion of a treating physician than that of a non-treating, consulting physician, the Court did not say that the ALJ must *always* do so. See 453 F.3d at 563. Indeed, the Hines court stated

explicitly that "[t]he treating physician rule is not absolute. An 'ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence.'" Hines, 453 F.3d at 563, n.1 (quoting Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

In February 2008, Dr. Constant, a state medical expert, considered the evidence and found that Plaintiff maintained the ability to perform light work. (R. at 397-403.) Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of medical records are "highly qualified" physicians and psychologists who are also "experts in social security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). Therefore, the ALJ must consider findings of the state agency medical expert. 20 C.F.R. §§ 404.1512(b)(6), 416.912(b)(6); Social Security Ruling (SSR) 96-6p.

Dr. Constant discussed in detail the findings of Dr. Graham, Richmond Community Hospital, and the neurosurgery evidence. (R. at 402-03.) Dr. Constant noted that he had taken into consideration Dr. Graham's opinion that Plaintiff could return to work, but had not based his entire functional capacity assessment upon Dr. Graham's opinion. (R. at 382, 403.) The ALJ, in turn, did not blindly rely upon Dr. Constant's opinion, but instead, considered whether Dr. Constant's opinion was consistent with the other objective medical evidence of record.

Substantial evidence supports the ALJ's determination that Plaintiff retained the RFC to perform light work, as assessed by Dr. Constant. (R. at 17-19.) The ALJ considered the evidence of Plaintiff's treating physicians, as well as the opinion of the state agency medical physician. It is the ALJ's responsibility to weigh the evidence in order to resolve any conflicts which might appear therein. Hays v. Sullivan, 907 F.2d 1452, 1456 (4th Cir. 1990); Taylor v. Weinberger, 528 F.2d 1153, 1156 (4th Cir. 1975). "Thus it is not within the providence of a reviewing court to determine the weight of the evidence, nor is it the court's function to

13

substitute its judgments for that of the [ALJ] if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456.

In determining whether substantial evidence supports the ALJ's decision, the Court also must consider whether the ALJ analyzed all the relevant evidence, and whether the ALJ sufficiently explained his findings and his rationale in crediting the evidence. Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997). While an ALJ may not reject medical evidence for no reason, or for the wrong reason, an ALJ may, under the regulations, assign no weight or little weight to a medical opinion based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale, and if the record supports his findings. King v. Califano, 615 F.2d 1018, 1020 (4th Cir. 1980). Plaintiff complains that Dr. Constant did not consider all of her post-operative medical records, especially those of her visits with Dr. Basavaraj. (Pl.'s Mem. at 32-33.) However, the *ALJ* not only considered Dr. Basavaraj's evaluations of Plaintiff, he actually relied upon them in his decision. (R. at 19.) Thus, the fact that *Dr. Constant* may not have considered Dr. Basavaraj's notes does not render the ALJ's reliance on Dr. Constant's evaluation of Plaintiff irrational.

Plaintiff also objects to Dr. Constant's reliance on Dr. Graham's "speculative note" predicting that Plaintiff would soon return to work. (Pl.'s Mem. at 32.) Plaintiff does not clearly articulate her objection to Dr. Constant's reliance on Dr. Graham's prediction, but at least part of Plaintiff's complaint seems to be that, only six weeks after major surgery, such a conclusion was premature. (See R. at 32.) If the ALJ or Dr. Constant had relied on the prediction as definitive, conclusive evidence that Plaintiff was not disabled, then the Court would agree that such an inference would be unwarranted. However, the ALJ referred to Dr. Graham's prediction merely as another piece of evidence supporting the ALJ's conclusion that Plaintiff's testimony about the

intensity, persistence, and limiting effects of her back pain was not credible, in light of the objective medical evidence. (R. at 18.) Moreover, the ALJ referred to Dr. Graham's prediction only indirectly, insofar as it is incorporated in Dr. Constant's evaluation, which the ALJ referenced briefly in his decision. (R. at 19.)

Here, the evidence demonstrates that Plaintiff's lumbar fusion healed properly and left no evidence of instability. (R. at 382.) Plaintiff's pain continued to lessen overtime with exercise and a medication regimen. (R. at 432, 445, 447, 449, 451.) She lived in a two-level apartment and maintained the ability to cook, drive occasionally, go to church, ride public transportation, wash dishes and laundry, and play Bingo. (R. at 30-31, 33-35, 41, 382.) It is reasonable to conclude that the objective evidence, including the report of Plaintiff's daily activities, does not reflect someone who is unable to perform the minimum demands of light work. While Plaintiff (or even this Court) may disagree with the ALJ's weighing of the evidence, that does not mean that the ALJ's decision is erroneous. 20 C.F.R. §§ 404.1527(d), 416.927(d). Because substantial evidence supports the ALJ's finding, this Court recommends rejection of Plaintiff's contention that the ALJ improperly relied upon Dr. Constant's evaluation of Plaintiff.

**3. Plaintiff contends that, assuming arguendo that the ALJ was correct in assigning weight to the non-examining doctor's opinion, it was legal and factual error for the ALJ to find that Plaintiff could perform her past relevant work within the restrictions noted by the non-examining, consulting doctor.**

Plaintiff contends that the ALJ's "determination that Plaintiff could perform her past relevant work is irrational as after a review of the record, the only rational decision is that such a person could not perform her past relevant work as a cleaner, shirt presser, or cashier...as the uncontroverted evidence is that these required Plaintiff to be on her feet eight to ten hours out of the work shift[,] and even the non-examining consulting doctor opined that Plaintiff was only

capable of sitting about six hours in an eight hour work day." (Pl.'s Mem. at 35.) In support of her line of argument, Plaintiff notes her statements to the effect that all of her past relevant jobs required her to stand more than six hours per day. For example, her job as a shirt presser required Plaintiff to stand eight hours per day, while her job as a poultry processor required her to stand ten hours per day, and her job as a cleaner/janitor required standing eight or nine hours per day. (Pl.'s Mem. at 36.)

Although Plaintiff may be correct that her RFC, as determined by the Agency, would not allow her to return to her past positions as she actually performed them, that does not resolve the question of whether Plaintiff can perform her past relevant work. At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of her previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). The burden is still on Plaintiff at step four to prove that she is unable to perform her past relevant work. Plaintiff must "show an inability to return to her previous work (*i.e.,* occupation), and not simply to her specific prior job." DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983) (citing Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981).). Further, the Commissioner may rely on the general job categories of the Dictionary of Occupational Titles (DOT) as presumptively descriptive of a claimant's prior work. Id.

Plaintiff's argument concerning the ALJ's finding with regard to Plaintiff's past relevant work is misguided, and miscomprehends the basis of the ALJ's opinion. Plaintiff asserts that, "had the ALJ looked at the description of [Plaintiff's] past relevant work, the only rational decision [would have been] that where these jobs required Plaintiff to stand on her feet eight to ten hours a day and where the non-examining consulting physician opined that Plaintiff could only stand or walk six hours out of an eight hour work shift, Plaintiff cannot perform her past

relevant work." (Pl.'s Mem. at 36.) Plaintiff is correct that the consulting physician found that Plaintiff could stand up to six hours per day. (R. at 397-403.) However, even assuming the truth of Plaintiff's testimony about the demands of her past relevant work as a shirt presser, poultry processor, janitor, and waitress, the ALJ's finding with respect to Plaintiff's past relevant work does not require that she be able to perform her past relevant work as she actually performed them.

Social Security Ruling 82-61 provides that there are three possible tests for determining whether an individual can perform his or her past relevant work: (1) whether the claimant has the capacity to perform his or her past relevant job based upon a broad generic, occupational classification of that job; (2) whether the claimant has the capacity to perform the functional demands and job duties peculiar to the individual job as he or she performed it; or (3) whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. Plaintiff's argument presupposes that the ALJ based his conclusion on test (2). However, the ALJ clearly avoided the second test, finding that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the [ALJ] finds that the claimant is able to perform it as actually and generally performed." (R. at 20.) Thus, the ALJ appealed to test (3) in finding that Plaintiff could return to her past relevant work, which does not require that she be able to perform the job as she performed it in the past.

In concluding that Plaintiff's RFC allowed her to return to her past relevant work, the ALJ relied on the testimony of vocational expert Andrew V. Beale. (R. at 20, 46-56.) The VE classified Plaintiff's work as a shirt presser, poultry processor, and a cleaner/janitor as unskilled, light work, and Plaintiff's past work as a waitress as low level semiskilled work, with no

transferrable skills.[6] (R. at 48.) The VE testified that a hypothetical claimant with the same age, education, work history, and an RFC with the limitations listed in Dr. Constant's RFC Assessment (R. at 397-403) could perform Plaintiff's past relevant work. (R. at 51.) Dr. Constant's RFC Assessment stated that Plaintiff is able to stand and/or walk (with normal breaks) for "about 6 hours in an 8-hour workday." (R. at 398.) Because the ALJ relied on the testimony of the VE, which was informed by Dr. Constant's RFC Assessment of Plaintiff (including the six-hour limitation), the Court recommends a conclusion that there was substantial evidence supporting the ALJ's finding that Plaintiff could perform her past relevant work *as those jobs are ordinarily performed in the national economy*.

After finding that Plaintiff's RFC allowed her to perform her past relevant work, the ALJ noted that even if Plaintiff had an RFC restricting her to sedentary work[7], the VE had also testified that Plaintiff's past work as a grocery store cashier gave her transferrable skills, such that Plaintiff would be found not-disabled by direct application of Medical-Vocational Rule

---

[6] The Code of Federal Regulations defines "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[7] The Code of Federal Regulations defines "sedentary work" as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." §§20 C.F.R. 401.1567(a), 416.967(a).

18

201.11.[8] (R. at 20, 48-49, 52.) Because the ALJ's finding that Plaintiff's RFC allows her to perform her past relevant work is supported by substantial evidence, the reliance on Medical-Vocational Rule 201.11 is unnecessary. Nevertheless, the Court agrees with the ALJ's analysis of the application of Rule 201.11 to Plaintiff's case, and notes that it provides further support for affirmance of the ALJ's decision.

Regardless of whether Plaintiff is able to perform her past relevant work as a shirt presser, poultry processor, or janitor, as she actually performed those jobs in the past, there was substantial evidence supporting the ALJ's finding that Plaintiff retains the capacity to perform the functional demands and job duties of those jobs as ordinarily required by employers throughout the national economy.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 12) and motion to remand (docket no. 13) be DENIED; that Defendant's motion for summary judgment (docket no. 15) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

---

[8] The Vocational Expert testified that, in addition to certain sedentary semiskilled cashiering positions available to Plaintiff (R. at 48), she could also perform unskilled, sedentary work: "There...are a variety of different kinds of occupations that...are classified as unskilled and sedentary work as a checker or an inspector, someone who visually inspects items or materials for defects. There are 1,100 unskilled, sedentary positions such as that in Virginia, and in the national economy approximately 54,000. There are simple assembly positions, hand assemblers where you sit, use your hands to put objects together. Eyeglass frames, for example. There are approximately 1,500 positions such as that in Virginia...And in the national economy approximately 52,000." (R. at 52.)

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                         /s/
                                                DENNIS W. DOHNAL
                                                UNITED STATES MAGISTRATE JUDGE

Date: July 28, 2011
Richmond, Virginia